# CARRINGTON *a.* ANDREWS.

*Delaware County Court ; September,* 1861.

DISQUALIFICATION OF JUSTICES.—JUDGE WHO HAS BEEN COUNSEL.

The provision of the Laws of 1847, 319, ch. 280, § 81,—declaring that " no judge of any court shall have a voice in the decision of any cause in which he has been counsel, attorney, or solicitor, or in the subject-matter of which he is interested,"—applies to justices of the peace.

Where the justice who rendered the judgment had been counsel for the plaintiff, in a suit before another justice for the same matters declared for before himself, and on application refused to dismiss the action,—*Held,* that the judgment should be reversed.

Appeal from a justice's judgment.

The facts are fully stated in the opinion.

*Parker & Wilcox,* for the appellants.

*Wm. Murray, Jr.,* for the respondents.

WM. GLEASON, COUNTY JUDGE. — The plaintiff originally brought his action for the matters declared for in this suit, before T. L. England, Esq., a justice of the peace ; and in that cause the justice, by whom the judgment appealed from was rendered, was employed by the plaintiff as his counsel therein, and he appeared on the return-day of the summons, and was sworn as to his authority to answer for the plaintiff, and he joined the issue, and procured an adjournment, being himself sworn as to its necessity, etc. · Justice England being absent upon the adjourned day, the action was thereby discontinued. Soon thereafter the defendant commenced an action before another justice, but for a different demand, and the justice who rendered the judgment in this action acted therein as counsel for the plaintiffs herein, and tried the cause ; and on the day of the trial the summons in this action was issued and served on

the defendant. On the trial of this action the defendant offered to prove that the justice had acted as counsel for the plaintiff in the prosecution of the matters before the court, in the suit before Justice England, and insisted that this action should be dismissed. The justice overruled the offer, and refused to dismiss the cause, and afterwards rendered judgment for the plaintiff for $62.78. The defendant appealed, alleging, among other grounds for reversal, that the justice who rendered the judgment had been counsel in the cause, and that he should have dismissed the action; and also setting up the matters as constituting an error of fact. The return and affidavits establish the facts as hereinbefore stated.

It is declared by the Laws of 1847, 319, ch. 280, § 81 (same statute, 3 *Rev. Stat.*, 5 ed., 466, § 8), that "no judge of any court shall have a voice in the decision of any cause in which he has been counsel, attorney, or solicitor, or in the subject-matter of which he is interested."

This, like all other remedial statutes, should receive a liberal construction; one which will best conduce to the prevention of the evil against which the Legislature designed to guard.

Justices' courts, by their greatly extended jurisdiction, and the large amount of litigation conducted therein, are yearly assuming greater dignity and importance, and we should be slow to refuse to apply to them all the safeguards for the purity of the administration of justice, which the Legislature has thrown around our other judicial tribunals.

I apprehend that at common law, for a magistrate to participate unnecessarily in the decision of a cause in which he had acted as counsel or attorney, would be deemed such evidence of *bias* or *partiality*, and so far calculated to impair public confidence in the administration of justice, as to require the reversal of the judgment. (See 19 *Johns.*, 172; 18 *Wend.*, 550; and 3 *N. Y.* (3 *Comst.*), 549, et seq.)

The kindred statute (2 *Rev. Stat.*, 275, § 2, same statute, 5 ed., vol. 3, 465), declaring that "no judge of any court can sit as such in any cause to which he is a party, or in which he is interested, or in which he would be excluded from being a juror, by reason of consanguinity or affinity to either of the parties," has been adjudged to apply to justices of the peace. (21 *Wend.*, 63; 1 *Hill*, 655; 3 *N. Y.* (3 *Comst.*), 351; 17 *Barb.*, 423.)

And it has been held that the statute extends to the person beneficially interested, as well as to the real party (1 *Hill*, 654; 27 *Barb.*, 422), and also though the party be merely a nominal one and fully indemnified (3 *N. Y.* (3 *Comst.*), 547).

I am not aware that the statute under consideration in this action has ever received judicial construction on the point in controversy, though it was alluded to in 21 Barb., 216.

In the People *a.* The Suffolk Common Pleas (18 *Wend.*, 550), the Supreme Court granted a mandamus for quashing a certiorari, where the justice before whom the cause had been tried, at the request of the counsel for the defendant, who was an attorney at law, in the absence of counsel prepared the affidavits for the defendant, and other necessary papers for suing out the certiorari.

The Supreme Court observed : " Except in the ministerial duty of issuing process, he (the justice) should not consent to act as the attorney or agent for the suitors in his court, nor do any thing calculated to create a bias, in favor of the one side or the other. . . . . The act complained of was calculated to impair the confidence of the opposite party in the impartiality of the officer, which is of itself an evil which should be carefully avoided. Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge."

The court also remarked that the justice " made a mistake in relation to his duty, *which, if sanctioned, would furnish a precedent of dangerous tendency.*"

In a standard work upon justices' courts (*Cowen's Treatise*, 4 ed., 528), it is laid down as a rule, that " a justice of the peace ought never to grant process for the trial of a cause where his opinion has been sought and obtained in relation to the matter in controversy, nor even where the party has made a statement of facts, and taken from the justice any direction whatever concerning them, though it be merely as to a course of proceeding to obtain redress."

Judge Hurlbut (Oakley *a.* Aspinwall, 3 *N. Y.* (3 *Comst.*), 547, et seq.) says : " The first idea in the administration of justice is, that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, *arbiter* and *advocate*, in the

same cause. Mankind are so agreed in this principle that any departure from it shocks their common sense and sentiment of justice. . . . . Partiality and bias are *presumed* from the relationship or consanguinity of a judge to the party. This presumption is conclusive, and disqualifies the judge."

The provisions of our Revised Statutes on that subject profess to be merely declaratory of universal principles of law. (See Revisor's Notes, 3 *Rev. Stat.*, 2 ed., 694.)

The *presumption* of bias or partiality is equally strong where the judge has been attorney or counsel in the same cause, and the statute in the latter case, as in the former, has but declared the principles of the common law, and the universal sentiment of all who are versed in jurisprudence or human nature.

No court, without a total disregard of the rules for the interpretation of statutes, could construe the one in relation to consanguinity, parties, etc., to be applicable to justices of the peace, and not the other also, even had both been enacted at the same time ; but where the older act had repeatedly received the same judicial construction long before the passage of the later one, it must be presumed that the Legislature intended that the like phraseology should bear the same interpretation.

I must therefore hold that the case before the court comes within the purview of the statute, and the judgment must be reversed.

Judgment reversed.